**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NAPLETON ENTERPRISES, LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | No. 15 C 3146 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| MICHAEL BAHARY AND STEVEN ) | |
| BAHARY PARTNERSHIP, BANCO ) | |
| POPULAR NORTH AMERICA, ) | |
| 334 GRAND JOINT VENTURE, LLP, ) | |
| RACHAEL A. GOULD, and MOMKUS ) | |
| MCCLUSKEY, LLC, ) | |
| ) | |
| Appellees. ) | |
| ) | |
| ) | |
| BANCO POPULAR NORTH AMERICA ) | |
| and 334 GRAND JOINT VENTURE, LLP, ) | |
| ) | |
| Cross-Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| NAPLETON ENTERPRISES, LLC, ) | |
| ) | |
| Cross-Appellee. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the appeal of Napleton Enterprises, LLC and the cross-appeals of Banco Popular North America and 334 Grand Joint Venture, LLP from the bankruptcy court's March 25, 2015 memorandum opinion (Bankr. Dkt. No. 440), as amended on April 1, 2015 (Bankr. Dkt. No. 445), and the bankruptcy court's March 25, 2015 Order on Motion for a Rule to Show Cause (Bankr. Dkt. No. 441). Napleton Enterprises, LLC also appeals from the bankruptcy court's March 25, 2015 Order Granting Banco's Motion to Join (Bankr. Dkt. No.

442). 334 Grand Joint Venture, LLP also cross-appeals from the bankruptcy court's March 25, 2015 Order Denying Relief to 334 Grand Joint Venture, LLP (Bankr. Dkt. No. 443). For the reasons explained below, the Court dismisses the appeal of 334 Grand Joint Venture, LLP; affirms in part and reverses in part the bankruptcy court's memorandum opinion as amended and the Order on Motion for a Rule to Show Cause; and reverses the Order Granting Banco's Motion to Join.

**BACKGROUND**

This appeal centers on real estate commonly known as 334 West Grand Avenue in Elmhurst, Illinois (the "Elmhurst Property"). Prior to February 24, 2004, Standard Bank and Trust Company ("Standard Bank") held title to the Elmhurst Property as trustee under a land trust of which Napleton Enterprises, LLC ("Napleton") was the sole beneficiary. On February 24, 2004, "Windy City Auto Group Corporation or assignee" entered into a Real Estate Sales Contract (the "Real Estate Contract") to purchase the Elmhurst Property from "Standard Bank and Trust Company, as Trustee" under the land trust. (ROA 2541-50.)[1] (The Real Estate Contract was evidently signed by a representative of Napleton, however, not a representative of Standard Bank.)

Rider B to the Real Estate Contract contains a "Grant of Right of First Refusal" that provides as follows:

> Seller is hereby granted a right of first refusal with respect to the subject property and/or any business owned by Purchaser and operating within the subject premises and/or any assets located thereon (the "Sale Property") only as follows:
> A.   If Purchaser desires to sell the Sole Property or any part thereof and receives from some third party a bona fide offer for the purchase thereof,

---

[1]Where the Court provides a cite to the Record on Appeal ("ROA"), it cites the "Page ID" number at the top right-hand corner.

    Purchaser shall disclose the terms of such offer to Seller, in writing, within five (5) days following the receipt of the offer by Purchaser.
  B. Seller shall have seven (7) days after receiving notice of the terms of the offer within which to elect to exercise his right to purchase the Sale Property on the identical terms to those offered by the third party. In the event Seller fails to notify Purchaser in writing of its election to exercise such right within said time Seller shall have waived such right and no further obligations shall be required.
  C. Seller's right of first refusal shall extinguish upon the 1st sale to any third party bona fide purchaser for value or ~~upon the leasing of the~~ subject property.
  D. Purchaser shall not be required to provide notice and Seller's right of first refusal shall extinguish upon the sale to either of the Purchasers, their spouses, children, relatives, heirs, ~~successors and/or assigns~~.

(*Id.* 2549.)[2] Evidently, Windy City Auto Group Corporation's assignee was the Michael Bahary & Steven Bahary Partnership, also known as the "Bahary Partnership" ("Bahary"), and on April 19, 2004, Standard Bank as Trustee executed a deed conveying the Elmhurst Property to Bahary. (*Id.* 2552-53.) The deed was recorded with the DuPage County, Illinois Recorder ("DuPage Recorder") on April 28, 2004. (*Id.*)[3]

  Banco Popular North America ("Banco") provided Bahary with a loan for the purchase of the Elmhurst Property. To secure the loan, Bahary granted Banco a mortgage on the property. Bahary then defaulted on its loan obligations, and on August 27, 2010, Banco filed in DuPage County a foreclosure action against Bahary. (*Id.* 2558.)

  On October 14, 2011, Bahary filed a petition for relief under Chapter 11 of the Bankruptcy Code. Banco's state-court foreclosure action was stayed pursuant to the automatic stay under § 362 of the Bankruptcy Code. In its bankruptcy petition and schedules, Bahary did

---

[2] The portions that are struck through were initialed by the signers.

[3] The deed did not contain any mention of the right of first refusal. On January 20, 2006, Napleton recorded with the DuPage Recorder a Memorandum of Right of First Refusal as set forth in the February 24, 2004 Real Estate Contract. (ROA 2555-56.)

3

not list the right of first refusal ("ROFR") or list Napleton as having any kind of potential claim. (*Id.* 2130-75.) Thus, Napleton did not receive notice of Bahary's bankruptcy proceeding.

On November 1, 2011, Banco filed a motion in the bankruptcy court seeking modification of the automatic stay to allow Banco to continue to pursue its foreclosure proceeding. (Bankr. Dkt. No. 35.) On May 7, 2012, Bahary filed a "motion to approve compromise and settlement of dispute." (ROA 2180-2226.) In the motion, Bahary sought the bankruptcy court's entry of an order authorizing Bahary to enter into a compromise and settlement with Banco. (*Id.* 2180, 2185.) Attached to the motion as Exhibit 1 was the proposed "Settlement and Deed in Lieu of Foreclosure Agreement" ("Settlement Agreement"). (*Id.* 2186-2226.) As part of the settlement, Bahary and Banco agreed that immediately upon entry of an order approving the settlement, Bahary would, by deed in lieu of foreclosure, turn over the Elmhurst Property to Banco. (*Id.* 2182, 2198.)[4] In the Settlement Agreement, Bahary represented that it had the "sole and complete legal and equitable title to" the Elmhurst Property and that there were "no options, options to purchase, lease options, *rights of first refusal* or equitable rights" of any other party. (*Id.* 2201 (emphasis added).) Bahary noted in its motion that it intended to amend its plan of reorganization to reflect the settlement with Banco. (*Id.* 2182.) Notice of the motion was provided to creditors and parties in interest as set forth in the service list attached to the motion; Napleton was not included. (*Id.* 2178-79.)

In an order entered on May 30, 2012, the bankruptcy court granted Bahary's motion and authorized it to settle Banco's claims against the bankruptcy estate pursuant to the Settlement Agreement. (Bankr. Dkt. No. 300.) The bankruptcy court also granted Banco's motion for relief

---

[4]The Settlement Agreement also encompassed mortgage loans for several other properties.

from the automatic stay and authorized Banco to take possession of the Elmhurst Property. (Bankr. Dkt. No. 299.) The same day, Bahary executed a warranty deed in lieu of foreclosure conveying the Elmhurst Property to Banco, and the deed was recorded on May 31, 2012. (ROA 2560-63.)

On June 14, 2012, Bahary filed its Second Amended Plan of Reorganization (the "Plan"), which provided in relevant part that on the effective date of the Plan or pursuant to agreement, whichever occurred first, Bahary would surrender the Elmhurst Property to Banco in exchange for Banco's waiver of unsecured claims. (Bankr. Dkt. No. 310 at 4.) The Plan also contained a discharge provision. (*Id.* at 9.) The bankruptcy court confirmed the Plan on August 21, 2012. (Bankr. Dkt. No. 349.)

On May 6, 2014, a Special Warranty Deed was recorded in DuPage County in which Banco conveyed the Elmhurst Property to 334 Grand Joint Venture, LLP ("334 Grand LLP"). (ROA 2568-70.)

On June 30, 2014, Napleton filed a lawsuit in DuPage County (the "DuPage Action") against Windy City Auto Group Corporation ("Windy City"), Bahary, Banco, and 334 Grand LLP in which Napleton seeks a declaratory judgment that the ROFR is valid and currently enforceable; Banco and 334 Grand LLP are not bona fide purchasers of the Elmhurst Property; the conveyance of the Elmhurst Property from Bahary to Banco triggered the ROFR; even if it did not, Banco took the Elmhurst Property subject to the ROFR; the conveyance of the Elmhurst Property from Banco to 334 Grand LLP triggered the ROFR; and there is no minimum purchase price requirement in the ROFR. (*Id.* 2524-26.) In addition, Napleton asserts breach of contract claims for damages against Windy City and Bahary; a breach of contract claim against Banco for damages and, in the alternative, a claim for tortious interference with contract; and a claim

5

seeking damages against 334 Grand LLP for tortious interference with prospective economic advantage. Napleton also seeks specific performance of the ROFR against Banco and 334 Grand LLP (with respect to the transaction between those entities), and, in the alternative, that a constructive trust be imposed on the Elmhurst Property and 334 Grand LLP be ordered to convey the property to Napleton. (*Id.* 2526-37.)

On July 18, 2014, Bahary's counsel sent a letter to Napleton's counsel to notify them that Bahary had filed for Chapter 11 relief in 2011 and received a bankruptcy discharge in August 2012. (*Id.* 2043.) The letter stated Bahary's position that the DuPage Action was a violation of the discharge injunction. (*Id.*) Further communications ensued between Bahary's counsel and Napleton's counsel, but they apparently reached a stalemate about whether the DuPage Action violated the discharge injunction. Napleton did not seek relief from the bankruptcy court; instead, after Bahary failed to file an answer in the DuPage Action, Napleton sought and obtained an entry of default on September 29, 2014. (*Id.* 2084.) The same day, Bahary filed a motion in the bankruptcy court to reopen the case, for an order to be entered to show cause why Napleton and its counsel should not be held in contempt of court for actions inconsistent with the Plan and for violating the discharge injunction, and for an award of reasonable attorneys' fees and costs. (*Id.* 2466-83.) Banco moved to join Bahary's motion and also requested that the bankruptcy court "determine the [e]ffect of the bankruptcy proceeding" on the DuPage Action and enter an order "staying all proceedings" in the DuPage Action until further order of the bankruptcy court.[5] (*Id.* 3059-3154.)

---

[5] 334 Grand LLP also later moved to intervene. (Bankr. Dkt. No. 429.) The bankruptcy court initially entered an order granting that motion, (Bankr. Dkt. No. 435), but later vacated the order and denied intervention, (Bankr. Dkt. No. 443).

The bankruptcy court reopened the case and then took briefs and held a hearing on the motions. On December 29, 2014, the bankruptcy court granted Bahary's motion and scheduled a show-cause hearing. (ROA 2486-97.) Napleton moved for relief from the order. (*Id.* 2501-2631.) The bankruptcy court denied that motion, (*id.* 2633-46), and held an evidentiary show-cause hearing on January 14 and 27, 2015.

On March 25, 2015, the bankruptcy court issued a memorandum opinion in which it concluded that, having found in its previous order that Napleton had no claim to assert in Bahary's bankruptcy because the transfer to Banco did not trigger the ROFR, it could not find that there was a violation of the discharge injunction as a result of Napleton's attempt to collect on a debt that did not exist. (*Id.* 2649; Bankr. Dkt. No. 440.) The bankruptcy court found that at best, Napleton held an "inchoate interest" and "neither Bahary nor its transferee Banco owed Napleton anything with regards to the right of first refusal." (*Id.* 2649, 2666.) Because Napleton did not have notice of the bankruptcy proceeding and the ROFR was not ripe, said the court, there were no grounds to find Napleton or its counsel in contempt. (*Id.* 2649.) However, "to achieve Bahary's reorganization goals," relieve it from the burden of "defending a matter where the complainant is pursuing an interest that is of no consequence,"[6] and "enforce its findings . . . that at the time of confirmation the Debtor and Banco owed Napleton nothing regarding its right of first refusal," the court stated that it would enter a separate order requiring Napleton to dismiss Bahary and Banco, with prejudice, from the DuPage Action. (*Id.* 2666.) The court entered that order, further stating therein that although it was finding that Napleton and its counsel had not violated the discharge injunction, "maintenance of the DuPage County, Illinois

---

[6]The bankruptcy court changed this language in its amended memorandum opinion to "defending a matter where the complainant is pursuing a baseless claim."

lawsuit is inconsistent with the findings made" by the court.[7] (*Id.* 2667; Bankr. Dkt. No. 441.) The court also entered an order granting Banco's motion to join Bahary's motion and for a rule to show cause, further stating that the motion was granted "as it also seeks to have Napleton's Right of First Refusal declared to not be in effect." (ROA 2668; Bankr. Dkt. No. 442.) On April 1, 2015, the bankruptcy court, sua sponte, issued an amended memorandum opinion and order (ROA 2669-88; Bankr. Dkt. No. 445.) In the amended memorandum opinion, the court made modest changes to certain portions of her discussion but indicated that her March 25, 2015 orders would stand, and she did not alter her substantive rulings.

These appeals followed.

## DISCUSSION

This Court sits as an appellate court for bankruptcy court proceedings. 28 U.S.C. § 158(a)(1). We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *See Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). Mixed questions of law and fact are reviewed de novo. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). Appellate review of a bankruptcy court's determination of jurisdiction is a question of law subject to de novo review. *In re Salem*, 465 F.3d 767, 774 (7th Cir. 2006).

### A. Napleton's Appeal

In its "statement of issues presented," Napleton implies that it will challenge the bankruptcy court's determinations on ten issues. (Napleton's Br., ECF No. 17, at 1-2.) But Napleton presents no argument in its brief that addresses the first seven issues it claims to

---

[7]This Court granted Napleton's motion to stay enforcement of this provision of the bankruptcy court's order pending appeal on the condition that Napleton seek to stay the DuPage Action. (Order, ECF No. 16.)

present. It has thus waived those arguments. *See Lee v. City of Elkhart, Ind.*, 602 F. App'x 335, 339 (7th Cir. 2015) (citing *Marcatante v. City of Chi.*, 657 F.3d 433, 444 n. 3 (7th Cir. 2011) (undeveloped arguments are waived) and *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n. 6 (7th Cir. 2002) (perfunctory and undeveloped arguments are waived, especially when a party fails to develop the basis of a claim on appeal)). Napleton's brief, which is disorganized and fails to track the issues purportedly addressed, properly presents three appellate issues: 1) whether the bankruptcy court had jurisdiction to determine that Bahary and Banco "do not owe Napleton anything" based on the ROFR and to order the dismissals of Bahary and Banco from the DuPage Action; 2) whether the bankruptcy court "acted properly" (in a constitutional sense, apparently) in requiring the dismissals; and 3) whether the Anti-Injunction Act prohibited the bankruptcy court from ordering the dismissals. The Court need discuss only the first issue.

The bankruptcy court determined that because Bahary's transfer of the Elmhurst Property to Banco was by deed in lieu of foreclosure and not a sale pursuant to a bona fide offer from a third party, Napleton held under the ROFR at best an "inchoate interest" that never developed into an enforceable right during Bahary's bankruptcy. (Bankr. Am. Mem. Op. at 3, 15-16.) In view of this finding and Napleton's lack of notice of the bankruptcy case, the court found no grounds for contempt. (*Id.* at 3.) But because the court had found that Bahary and Banco owed Napleton nothing based on the ROFR and Napleton therefore had no claim to assert in the bankruptcy, the court ordered Napleton to dismiss its claims against Bahary and Banco in the DuPage Action in order to "enforce" these findings and "achieve Bahary's reorganization goals." (*Id.* at 3, 17, 19.)

Napleton does not dispute that the bankruptcy court had jurisdiction to consider whether a violation of the discharge injunction occurred, (Napleton's Reply, ECF No. 29, at 8), but it contends that the bankruptcy court did not have subject-matter jurisdiction under § 1334 to determine that Bahary and Banco owed it nothing under the ROFR or to order Napleton to dismiss Bahary and Banco from the DuPage Action. Napleton urges this Court to vacate, for lack of jurisdiction, the portions of the bankruptcy court's orders that require the dismissals, as well as the "portions . . . examining, interpreting and ruling on the ROFR." (Napleton's Br. at 8.)

Federal district courts have original jurisdiction over bankruptcy cases and related proceedings. 28 U.S.C. § 1334(a), (b); *Wellness Int'l Network, Ltd. v. Sharif*, --- U.S. ----, 135 S. Ct. 1932, 1939 (2015). The district courts may refer "any or all" bankruptcy cases and related proceedings to the bankruptcy judges for the district, 28 U.S.C. § 157(a), and the courts in this district have done so, see N.D. Ill. Local Rule 40.3.1(a).

Under 28 U.S.C. § 1334(b), bankruptcy courts have subject-matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." The bankruptcy court found that it had the power to hear and determine the contempt proceedings as "core proceedings," that is, those "arising under" title 11 or "arising in" a case under title 11. (Bankr. Am. Mem. Op. at 4-7 (citing 28 U.S.C. § 157(b)).) The court further stated that "[p]roceedings to enforce the statutory injunction under § 524(a)(2) are core proceedings under 28 U.S.C. § 157(b)(2)(O)—'other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.'" (*Id.* at 6 (ellipses omitted).)

"Arising in" jurisdiction encompasses matters that arise only in a bankruptcy case and concern the administration of the bankrupt estate, such as questions as to discharge of a debtor,

turning over of estate property, and the validity, extent or priority of liens. *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010); *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). "A proceeding 'arises in' bankruptcy only if it has 'no existence outside of the bankruptcy.'" *Repository Techs.*, 601 F.3d at 719 (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)). Claims "arising under" title 11 "depend on a right created or determined by a statutory provision of title 11." *Id.* (internal quotation marks omitted); *Stoe*, 436 F.3d at 216 (a proceeding "arises under" title 11 "if it invokes a substantive right provided by title 11").

Although 11 U.S.C. § 105(a) states that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, that provision merely codifies that court's equitable powers and does not provide an independent jurisdictional basis. *In re Cary Metal Prods., Inc.*, 158 B.R. 459, 465 (N.D. Ill. 1993) ("Section 105 does not provide a jurisdictional basis, but provides the scope and forms of relief the court may order in an action in which it has jurisdiction.") (internal quotation marks omitted), *aff'd sub nom. Zerand-Bernal*, 23 F.3d 159; *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005) (stating that "§ 105 does not provide an independent source of federal subject matter jurisdiction" and "the exercise of bankruptcy power must be grounded in statutory bankruptcy jurisdiction."); 1 William L. Norton, Jr. & William L. Norton III, *Norton Bankruptcy Law and Practice* § 4.4 at 4-18 (3d ed. 2011) (§ 105 "neither confers nor was

designed to confer subject-matter jurisdiction on bankruptcy courts").[8]  Therefore, this Court must examine the scope of the bankruptcy court's subject-matter jurisdiction under 28 U.S.C. § 1334(b), its exclusive source of jurisdiction.

Bahary's request for entry of a contempt order was within the bankruptcy court's core "arising under" jurisdiction pursuant to § 1334(b) because it was based on rights explicitly provided in the Bankruptcy Code: the discharge (by virtue of plan confirmation) in 11 U.S.C. § 1141(d) and the discharge injunction in 11 U.S.C. § 524(a)(2). *See In re Conseco, Inc.*, 330 B.R. 673, 681-82 (Bankr. N.D. Ill. 2005). As part of this "arising under" jurisdiction, the bankruptcy court had jurisdiction to interpret and enforce the discharge injunction. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir. 2001) ("A court retains jurisdiction to enforce its injunctions.").

Napleton maintains that once the bankruptcy court determined that Napleton did not violate the discharge injunction and the court declined to hold it and its counsel in contempt, the court should have declined to make any determination regarding the nature of Napleton's rights under the ROFR. (Napleton's Br. at 8.) This argument that the bankruptcy court exceeded its jurisdiction in examining the ROFR and whether any right of Napleton's survived the approval of the Settlement Agreement and entry of the Plan is an artificial approach that ignores how the

---

[8]Similarly, the fact that the bankruptcy court in the Plan purported to assume jurisdiction to determine "all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date, between (a) the Reorganized Debtor and any other party, or (b) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case," (Bankr. Dkt. No. 310 at 9-10), does not confer subject-matter jurisdiction. *See Zerand-Bernal*, 23 F.3d at 163-64 ("A court cannot write its own jurisdictional ticket."); *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) "[I]f a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order.").

12

court arrived at its conclusion that Napleton had not violated any of the court's orders. In order to rule on the issue of whether Napleton had flouted the discharge injunction by suing Bahary on the ROFR, which Napleton does not dispute was within the bankruptcy court's jurisdiction, the court had to analyze the nature of the ROFR vis-à-vis Bahary and the bankruptcy proceeding to determine whether Napleton was attempting to collect a discharged debt.[9] To the extent that the bankruptcy court opined on the nature or effect of the ROFR beyond that, however, it was without jurisdiction to do so for the reasons discussed below.[10]

Given that the bankruptcy court concluded that there was no violation of the discharge injunction, its was not enforcing that injunction when it ordered Napleton to dismiss its claims against Bahary and Banco. But in the court's view, its order was "necessary to enforce its findings that at the time of confirmation [Bahary] and Banco owed Napleton nothing regarding its [ROFR]." (Bankr. Am. Mem. Op. at 17.) Napleton contends that the bankruptcy court was not empowered to make those findings or order the dismissals. This Court agrees. The focus here is not on the bankruptcy court's jurisdiction to enforce the discharge, but on its jurisdiction over Napleton's state-court claims against Bahary and Banco. Those claims did not arise during the bankruptcy proceeding or concern the administration of the bankrupt estate, nor do they depend on a right created by the Bankruptcy Code, so they cannot be said to "arise in" a

---

[9]Napleton's request that the Court "vacate the portions of [the bankruptcy court's] order examining, interpreting and ruling on the ROFR," (Napleton's Br. at 8), is vague, and accordingly the request is waived as undeveloped. If Napleton wanted this Court to vacate certain findings, it should have identified those findings specifically.

[10]The discharge protected Bahary (the debtor), not Banco (a creditor). The bankruptcy discharge "operates as an injunction, but only against suing the debtor; the statute is explicit on this point." *Zerand-Bernal*, 23 F.3d at 163.

13

bankruptcy proceeding or "arise under" title 11. The next question, then, is whether the DuPage Action is "related to" Bahary's bankruptcy.

"The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. . . . [I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). Furthermore, as the court observed in *Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.*, 243 F. Supp. 2d 786, 789-90 (N.D. Ill. 2003):

> [P]lan confirmation is an important turning point for purposes of bankruptcy jurisdiction. *See Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991). Once a plan is confirmed, bankruptcy jurisdiction is sharply reduced. *See id.*; *In re Schwinn Bicycle Co.*, 210 B.R. 747, 754 (Bankr. N.D. Ill. 1997). Though "related to" jurisdiction can extend to post-confirmation disputes, *In re S.N.A. Nut Co.*, 206 B.R. 495, 500 (Bankr. N.D. Ill. 1997), the exercise of such jurisdiction is appropriate only to ensure that reorganization plans are implemented and to protect estate assets devoted to implement the confirmed plan. *Schwinn*, 210 B.R. at 755 (citing *Matter of Energy Cooperative Inc.*, 886 F.2d 921, 929-930 (7th Cir. 1989)). More generally, "related to" jurisdiction exists only where adjudication of the case would affect the property available for distribution or the allocation of property among creditors. *See Xonics*, 813 F.2d at 131 (7th Cir. 1987); *In re FedPak Systems Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996); *Zerand–Bernal Group Inc. v. Cox*, 23 F.3d 159, 161-162 (7th Cir. 1994). The question, therefore, is not whether [the debtor] remained under bankruptcy supervision when the case was filed. Rather, "related to" jurisdiction depends on whether the outcome of this infringement suit could impact creditor recovery or the implementation of the confirmed plan.

*Id.* The Seventh Circuit interprets "related to" jurisdiction narrowly, "out of respect for Article III . . . as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts," and therefore its test for "related to" jurisdiction is more limited than that of other Courts of Appeals. *FedPak*, 80 F.3d at 213-14; *see also Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) ("Overlap between the bankrupt's

affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors.").

Banco argues, conclusorily, that "[a]llowing Napleton to pursue a non-existent claim against the [Elmhurst] Property threatens the Confirmed Plan, the Bankruptcy Court's interpretation of the terms of the Confirmed Plan, and thus, the relief afforded to both Banco and Bahary under the Code." (Banco's Br., ECF No. 21, at 14.) But it does not explain in terms of the proper § 1334 considerations how the DuPage Action is "related to" Bahary's bankruptcy proceeding. The issue is whether Napleton's claims against Bahary and Banco in the DuPage Action affect the amount of property for distribution (in other words, the estate) or the allocation of property among creditors. In this Court's view, the answer is no. The dispute does not involve property of the estate. Bahary relinquished its interest in the Elmhurst Property when the property was deeded to Banco. The jurisdiction of the bankruptcy court "does not follow the property[; i]t lapses when property leaves the estate." *Xonics*, 813 F.2d at 131. The property in the estate has already been distributed to Bahary's creditors, the reorganization Plan was confirmed, and the bankruptcy was closed. Payments to creditors have already been made and will not be affected. Furthermore, contrary to Banco's assertion, Napleton does not seek to unwind the deed-in-lieu transaction that was approved by the bankruptcy court (rather, it seeks to unwind a subsequent transfer). The dispute over the ROFR goes beyond any enforcement or implementation of the confirmed Plan. The Court is also mindful that Napleton had no opportunity in the bankruptcy case to protect any right it may have had.

Given that Napleton seeks damages in the DuPage Action based on its allegation that Bahary "convey[ed] the [Elmhurst Property] or caus[ed] the [Elmhurst Property] to be conveyed to Banco without notice to Napleton and its counsel under the ROFR," (ROA 3086-87), and that

15

conveyance had been approved by the bankruptcy court, the Court can understand the bankruptcy court's desire to rule on the effect of that proceeding on Napleton's claims against the reorganized debtor and a former creditor. But the bankruptcy court's approval of the deed-in-lieu transaction between Bahary and Banco, and the fact that the transaction was a part of the confirmed Plan,[11] is not enough to confer subject-matter jurisdiction over Napleton's state-court claims that arise under state law. *See Zerand-Bernal*, 23 F.3d at 162-63 ("[A] dispute over the meaning or validity of an agreement between the purchaser at a bankruptcy sale and some third party . . . arises under state rather than federal law.").[12] The state court in DuPage County is fully capable of determining the nature of Napleton's ROFR interest and how the transfer to Banco may have affected it. *See Cary Metal Products*, 152 B.R. at 934 n.8; *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 342 (N.D.N.Y. 2002).

Accordingly, because the bankruptcy court was without subject-matter jurisdiction under § 1334, the Court will vacate the bankruptcy court's finding that Bahary and Banco "do not owe Napleton anything" with respect to the ROFR as well as its order requiring Napleton to dismiss its claims against Bahary and Banco in the DuPage Action. Because the jurisdictional issue is dispositive, the Court need not reach Napleton's remaining arguments pertaining to jurisdiction, the constitutional propriety of the bankruptcy court's actions, and the Anti-Injunction Act.

---

[11]The Court rejects Napleton's unsupported argument that the Settlement Agreement was not part of Bahary's Plan or confirmation simply because the deed-in-lieu transaction took place prior to Plan confirmation. Napleton's argument contradicts the terms of the Plan, which expressly included the surrender of the Elmhurst Property pursuant to the settlement. (Bankr. Dkt. No. 310 at 4.)

[12]Moreover, it appears doubtful that there is another source of jurisdiction here besides bankruptcy jurisdiction, but in any event, none of the parties suggest that there is one.

**B.     Banco's Cross-Appeal**

Banco has cross-appealed from the portion of the bankruptcy court's order declining to hold Napleton and its counsel in contempt.[13] Banco does not challenge the court's holding that there was no violation of the discharge injunction, but nonetheless asserts that this Court should "reverse that portion of the Bankruptcy Court's order declining to hold [Napleton] and its counsel in contempt" and remand for imposition of "[a]n award of sanctions, including attorney's fees and costs," under 11 U.S.C. § 105(a), which in Banco's view "is proper here to reprimand Napleton for its inexplicable pursuit and continuation of the DuPage Lawsuit contrary to the reasonable position taken by Bahary's counsel . . . ." (Banco's Br. at 27-28.) This Court has concluded that the bankruptcy court did not have jurisdiction to order Napleton to dismiss its claims against Banco in the DuPage Action. But even if the court had had such jurisdiction, Banco's cross-appeal would fail.

In support of its assertion that it "raised the issue of the assessment of sanctions" before the bankruptcy court, Banco cites only its reply brief in support of its motion to join Bahary's motion to reopen the case and for a rule to show cause, in which Banco sought attorneys' fees and costs under § 105(a) and presented an undeveloped argument. (ROA 3198-99.) Banco's *motion* to join Bahary's motion to reopen the case and for a rule to show cause, however, did not include a request for an award of attorneys' fees and costs, (*id.* 3059-60), and Bahary's motion

---

[13]Napleton and its former counsel, Momkus McCluskey, LLC and Rachael A. Gould, filed separate responses to Banco's cross-appeal. In the final paragraph of counsel's brief, they request that this Court "reverse that part of the Bankruptcy Court's order requiring [Napleton] to dismiss" Bahary and Banco with prejudice from the DuPage Action. (Momkus McCluskey, LLC's and Rachael A. Gould's Br. Opp'n Banco's Cross-Appeal, ECF No. 25, at 7-8.) The Court disregards this request because counsel did not file an appeal from the bankruptcy court's order and do not have standing to request that relief for Napleton.

17

did not include a request for any attorneys' fees and costs that *Banco* had incurred, (*id.* 2471). By making its request for fees and costs for the first time in a reply brief before the bankruptcy court, Banco waived the argument and failed to preserve it for appeal. *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 382 (7th Cir. 2011); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1048 (7th Cir. 2000) (concluding that the appellants waived the argument that the sanctions imposed by the bankruptcy court were excessive and unwarranted, and noting that "such arguments must be made to the sanctioning court if they are to be considered by a reviewing court"). Therefore, the Court will not consider the merits of Banco's appeal.

Even if Banco had not waived its request in the bankruptcy court, it has waived the issue here because it fails to acknowledge that this Court applies the deferential "abuse of discretion" standard to the bankruptcy court's decision not to hold Napleton and its counsel in contempt. *See In re Taylor*, 793 F.3d 814, 818 (7th Cir. 2015); *Rimsat*, 212 F.3d at 1046. Banco asserts that the bankruptcy court "gave an unnecessarily charitable view as to what Napleton did" and that an award of sanctions "was warranted." (Banco's Br. at 25, 27). But Banco does not develop an argument, or even contend in a conclusory fashion, that the bankruptcy court abused its discretion in that its decision was irrational, arbitrary, or based on either a clearly erroneous factual conclusion or an error of law. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004).

**C.     334 Grand LLP's Cross-Appeal**

334 Grand LLP filed a notice of cross-appeal but failed to file a brief or anything further in this proceeding. Accordingly, 334 Grand LLP's appeal is dismissed for want of prosecution and pursuant to Federal Rule of Bankruptcy Procedure 8018(a)(4).

## CONCLUSION

The cross-appeal of 334 Grand Joint Venture, LLP is dismissed. The Court affirms in part and reverses in part the bankruptcy court's memorandum opinion of March 25, 2015 (Bankr. Dkt. No. 440), as amended on April 1, 2015 (Bankr. Dkt. No. 445), as well as the Order on Motion for a Rule to Show Cause (Bankr. Dkt. No. 441). The Order on Motion for a Rule to Show Cause will stand to the extent that the bankruptcy court found that Napleton and its counsel did not violate the discharge injunction and the court declined to hold those parties in contempt of court. The Order on Motion for a Rule to Show Cause is vacated as to 1) the bankruptcy court's finding that the Michael Bahary & Steven Bahary Partnership and its transferee, Banco Popular North America, "do not owe Napleton anything with regards to the Right of First Refusal provided for in the 2004 Sale Agreement"; and 2) the order requiring Napleton to dismiss the Michael Bahary & Steven Bahary Partnership and Banco Popular North America with prejudice from the DuPage Action. The Court vacates the Order Granting Banco's Motion to Join (Bankr. Dkt. No. 442).

**SO ORDERED.**                           **ENTERED:   March 1, 2016**

_____
**JORGE L. ALONSO**
**United States District Judge**